W. T. HARBISON, Administrator of Estate of SAMUEL M. MCCOWAN, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY and S. M. FILIPCZAK, Appellants.—37 S. W. (2d) 609.

Division One, March 31, 1931.

442

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellants.

444

*E. M. Harber, Davis & Ashby, R. H. Musser, Gerald Cross* and *Pross T. Cross* for respondent.

FRANK, J.—Action to recover damages for alleged false imprisonment and slander. The petition was in three counts, the first for false imprisonment, the second for slander and the third for malicious prosecution. At the close of the evidence plaintiff dismissed as to the third count. The jury returned a verdict against both defendants in the sum of $5,000 actual and $5,000 punitive damages on the first count and $10,000 actual and $10,000 punitive damages on the second count of the petition. Judgment for $30,000 was rendered against both defendants, from which they appealed. After the appeal plaintiff McCowan died and the cause was revived

in the name of W. T. Harbison, administrator, who now prosecutes this action as such.

Respondent has filed two separate motions to dismiss the appeal herein. Both motions were taken with the case. The ground of the first motion is that appellants did not deliver to respondent a copy of their brief thirty days before the cause was set for hearing in this court, as provided by our rules. The cause was set for hearing here on April 9, and appellants' brief was served on March 12.

Respondent was represented by attorneys Cross and Cross of Lathrop, E. M. Harber of Trenton, Davis and Ashby of Chillicothe and R. H. Musser of Plattsburg. Appellants' counsel lived in Kansas City, Missouri. Affidavits filed by appellants show that counsel prepared their brief and forwarded same to W. I. Ritter, defendant railroad's station agent at Lathrop, Missouri, with instructions to serve same on Pross T. Cross or Gerald Cross, respondent's attorneys who lived at that place. Ritter received the briefs on March 10, 1930, and attempted to serve them on that day, but found that neither Pross T. Cross nor Gerald Cross was in the city of Lathrop. Their law office and their homes were both closed, with no one in charge of either. About noon on the same day Ritter reported these facts to appellants' attorney, Hale Houts, by long distance telephone. Houts instructed him to continue his efforts to serve the brief during the day and night, which he did. Upon learning of the absence of Cross and Cross from the city of Lathrop, Houts on the afternoon of March 10, and prior to two o'clock P. M. called by long distance telephone, E. M. Harber, R. H. Musser, W. W. Davis and Frank Ashby at their respective places of residence for the purpose of advising them of the absence of Cross and Cross from the city of Lathrop and arranging with them for service of appellants' brief or making some agreement with respect thereto, but the telephone operator reported that neither of the parties called was in the city of their residence and was not expected to return that day. Houts learned that Mr. Cross had said that he expected to be in Platte City on March 10. Upon learning this fact he called the Clerk of the Circuit Court at Platte City, who informed him that Mr. Cross had been there but he knew nothing of his whereabouts at that time. On the next day appellants' counsel called Mr. Harber at Trenton and inquired whether he would waive timely service of the brief. Mr. Harber replied that he did not know that he was any longer one of the attorneys in the case and that he had no authority to make any agreement. A copy of the brief was delivered to Mr. Harber on March 12. The station agent at Lathrop continued his efforts to serve the brief on Cross and Cross from March 10 to March 13, but was unable to find either

their office or their homes open until March 13, on which date he delivered them a copy of the brief.

It appears from affidavits filed by respondent that all of re- spondent's attorneys were away from home on March 10, either attending court or on business connected with cases pending in court. Cross and Cross left Lathrop at 8:15 o'clock A. M., returning at ten P. M., during which time their office was closed. E. M. Harber left Trenton. at eleven o'clock A. M., and it is not shown when he returned. Davis and Ashby left Chillicothe at 8:30 A. M., returning shortly after two P. M., during which time their office was in charge of a stenographer authorized to accept service. It appears from counsels' statement that R. H. Musser was attending court at Kingston in Caldwell County and Mr. Musser's affidavit does not show what hour of the day he returned to his home at Platts- burg. It further appears that the wives of Pross T. and Gerald Cross were at their respective homes in Lathrop on March 10, except for two or three short periods during the day. It is shown by the affidavit of Mrs. Cook, daughter of Pross T. Cross, that the station agent of defendant railroad at Lathrop inquired of her over the telephone as to the whereabouts of Mr. Cross and was informed that he was expected to return to Lathrop on the evening of March 10.

The facts show that appellants' brief was prepared and counsel was making diligent effort to personally serve respondent's counsel with a copy thereof and it would have been so served within the time fixed by our rules but for the absence of respondent's counsel from their homes and place of business.

It is contended (1), that if the brief had been mailed to Cross and Cross at Lathrop instead of the station agent. Cross and Cross who lived at Lathrop would have received it on March 10, which would have been in time. and (2), if the station agent after discovering the absence of Cross and Cross had deposited the brief in the post office at Lathrop, addressed to them, they would have received it on March 10.

While the courts hold that briefs may be served by mail where the facts connected with the mailing are sufficient to justify a reasonable inference that the party to whom the brief was mailed received it, yet where a party makes an honest and diligent effort to get personal service before resorting to the mails, he should not be penalized for so doing. It has been said that personal service is preferable to service by mail. [Bachman v. Brown, 56 Mo. App. 396.] The facts justify a reasonable inference that Cross and Cross would not have received the brief on March 10, if the station agent had deposited it in the post office at Lathrop after he discovered their absence from the city and his inability to serve them personally. On their own showing, they left the city at 8:15 A. M., and

did not return until 10 P. M., during which time their office was closed.

A literal interpretation and enforcement of our rules in every case where there has been a delay in serving briefs, regardless of the cause of such delay would, in some cases, defeat rather than promote justice. While it has been said that rules of court adopted pursuant to a statute have the force of law, yet substantive law and rules of court should both be reasonably interpreted and administered. In Bank v. Hutton, 224 Mo. 42, 52, 123 S. W. 47, this court en banc said:

"The rules of this court are not administered except with reason. It would be self-stultification for us to apply reason to the administration and interpretation of substantive law and to ride off on a dry and narrow interpretation, devoid of reason, when dealing with our own rules."

In Hurley v. Kennally, 186 Mo. 225, 85 S. W. 257, a motion was filed asking that the judgment be affirmed because of the failure of appellant to deliver to respondent his abstract and brief within the time required by the rules of the court. In ruling that motion, we said:

"The affidavits on file show that appellant was moving in the matter with reasonable diligence and the papers would have been delivered in time but for an accident that occurred in the printing establishment, where the abstract and brief were being printed, whereby the presses broke down and the work was delayed. Under the circumstances, the appellant was not in fault, and, therefore, the motion to affirm for failure to comply with the rules is overruled."

Respondent cites Taylor v. Heart of American Hospital Assn., 2 S. W. (2d) 804, and State ex rel. Pedigo v. Robertson, 181 S. W. 987, 988, in support of his contention that the appeal in this case should be dismissed. It was not shown in either of these cases, what effort, if any, was made to comply with the rules, and no attempt was made to show why the briefs were not served in time. The cases are not in point here.

The motion to dismiss the appeal because of delay in serving brief should be and is overruled.

The second motion asks that the appeal be dismissed because appellants' brief does not contain a fair and concise statement of the facts of the case without reiteration, statement of law or argument as provided by our Rule 15 and Section 1511, Revised Statutes 1919. On examination of the statement we find it in substantial compliance with the statute and with our rules. The motion to dismiss is overruled.

The evidence relative to the merits tends to show the following facts:

Samuel M. McCowan was a resident of Cameron, Clinton County, Missouri. Defendant Filipczak was in the employ of defendant Rock Island Railroad as a special agent. He and J. H. Miller and J. W. Kresse, special agents of the Burlington Railroad, and one Clarence David, deputy sheriff of Clinton County, went to the Prosecuting Attorney of Clinton County on January 23, 1924, and asked for a search warrant to search the home of Samuel M. McCowan. Defendant Filipczak told the prosecuting attorney that they had information which convinced them that stolen goods were stored in McCowan's home, and they had positive proof that liquor was stored there and was being sold to employees of the railroad. He gave the prosecuting attorney the names of two or three employees who said they had purchased liquor there.

The prosecuting attorney was of the opinion that the evidence regarding stolen goods was not sufficient to justify the issuance of a search warrant. However, he regarded the evidence as to the storing and sale of intoxicating liquor sufficient, and accordingly filed with a justice of the peace his verified application praying that a search warrant be issued authorizing the search of the premises in question for intoxicating liquor. The justice issued the search warrant, which commanded the officer, in the name of the State of Missouri, with the necessary assistance, to search the premises described in the warrant for intoxicating liquor, and if the intoxicating liquor be found on said premises to take possession of same and arrest any person found in charge thereof. The search warrant was delivered to Deputy Sheriff David, who requested defendant Filipczak and the two Burlington special agents to accompany him and assist in making the search. In obedience to the deputy sheriff's request defendant Filipczak and the other men accompanied him to the McCowan home and assisted him in making the search. They searched the dwelling house, chicken house, other outbuildings and the surrounding premises. They found a quantity of goods in the dwelling house which the deputy sheriff thought was probably stolen goods and he so notified the prosecuting attorney. They also found a considerable quantity of intoxicating liquor concealed under the floor of the chicken house. After the intoxicating liquor was found, the deputy sheriff arrested Samuel McCowan under the search warrant and lodged him in jail, where he remained until the next day, when he was released upon his depositing a certified check in lieu of a bond. McCowan testified that as he and the deputy sheriff were leaving the house for the jail, defendant Filipczak said to the deputy sheriff: ''Put him in and keep him in, don't accept no bond of any kind, just hold

him there. Hold him, don't let him out at all on no ground, give no bond. We have got him and the Rock Island will furnish the evidence to penitentiary him." He further testified that he was financially able and ready to give bond and requested that he be taken before the proper officer for that purpose, but his request was denied and he was lodged in jail. Plaintiff was permitted, over the objection and exception of defendants, to testify that when they reached the jail, the jail door was opened and Kresse, the Burlington Railroad special agent, said, "Get in there, you damned old son of a b——." The record shows that defendant Filipczak was not present at the jail when that occurred.

After McCowan was lodged in jail the deputy sheriff took possession of the goods and the liquor which he obtained in the search. A complaint was filed against McCowan charging him with possession of intoxicating liquor. He was later discharged. No complaint was filed against him relative to the goods that were taken in the search and the goods were later returned to him.

At the close of all the evidence defendants requested and the court refused the following instruction:

"The court instructs the jury at the close of all the evidence in the case, that under the pleadings and the evidence your verdict must be for defendants on the first count of plaintiff's petition."

The refusal of this instruction is assigned as error.

The evidence tends to show that after the search of the premises, the discovery of the intoxicating liquor and the arrest of McCowan under the search warrant by the deputy sheriff, defendant Filipczak requested and encouraged the deputy sheriff to lodge McCowan in jail and not permit him to give bond. Regardless of McCowan's guilt or innocence and regardless of the legality or illegality of his arrest, he had the lawful right to give bond. [Constitution, Art. II, Sec. 24.] The arrest was made at eleven o'clock in the forenoon. There was evidence that as the sheriff and J. W. Kresse took McCowan to jail they passed within sixty feet of the office of the justice of the peace who issued the search warrant; that McCowan was ready and able to give bond, so told the deputy sheriff, and requested that he be taken before the justice for that purpose; that they told McCowan they had no time to fool with him, denied his request and lodged him in jail.

It was the duty of the deputy sheriff to afford McCowan an opportunity to give bond, and if he wrongfully denied him such opportunity his imprisonment thereafter was unlawful and therefore false imprisonment, for which the deputy sheriff would be liable. [25 C. J. 491-495.] Likewise any person who induces an officer to deny a prisoner the

right to give bail when he is lawfully entitled thereto, or in any manner aids, assists or encourages the officer in such unlawful imprisonment, is liable therefor as a principal. [Cooper v. Johnson. 81 Mo. 483, 489.] Evidence that defendant Filipczak requested and encouraged the officer to deny McCowan the right to bail and to lodge him in jail and keep him there, tendered an issue of fact as to Filipczak's connection with McCowan's imprisonment and made a submissible issue of false imprisonment as against him, and warranted the court in refusing the request that a verdict be directed in favor of both defendants. A request for a directed verdict in favor of all the defendants should be denied, where, as in this case, there is evidence to support a verdict against one of them. [38 Cyc. 1581.] It might be well to say in passing, that we do not hold that every time an officer makes an arrest it is his duty to immediately take the prisoner before the proper officer for the purpose of giving bond, regardless of the circumstances surrounding the arrest. The time of day or night the arrest is made, the condition of the prisoner, his ability and readiness to give a sufficient bond and other circumstances not necessary to mention here are all determinative factors. Each individual case must stand on its own facts.

Respondent further contends that there was evidence that McCowan was unlawfully detained, restrained of his liberty and imprisoned in his home by defendant Filipczak while the search was being made and before any intoxicating liquor was discovered, and as the search warrant authorized his arrest only in event intoxicating liquor was found in his possession, his detention prior to the discovery of the liquor was unlawful. There was evidence that while the deputy sheriff and his other assistants were searching the upstairs rooms, Filipczak remained downstairs with McCowan, kept a watch over him, and prevented him from going from one room to another unattended. McCowan testified that he was sitting in the room with Filipczak; that he attempted to leave the room and Filipczak put his hand on him, pushed him back, and he sat down. Later Filipczak went upstairs and took McCowan with him. Under other circumstances, Filipczak's conduct might be regarded as an unlawful restraint of McCowan's liberties, but where, as here, his premises were being searched under a valid search warrant, the rule should be otherwise. We regard a reasonable surveillance of a party whose premises are being searched as a necessary part of the search authorized by the search warrant. To hold otherwise would afford such party an opportunity to secrete or destroy the thing searched for and thus effectively defeat the purpose of the search. This contention is ruled against respondent.

After the request for a directed verdict in favor of both defendants was denied, and properly so for reasons heretofore stated, the sufficiency of the evidence as against defendant railroad was not challenged by demurrer or otherwise, but on the contrary the issues were submitted to the jury by instructions given at the request of said defendant. In this situation, submissibility of the case as against defendant railroad is not an open question here. [Hansen v. Boyd, 161 U. S. 1. c. 402; Hartford v. Unsell, 144 U. S. 1. c. 451; Kenefick-Hammond Co. v. Fire Ins. Society, 205 Mo. 294, 311, 103 S. W. 957.]

Appellants contend that error was committed in permitting McCowan, over defendants' objection, to testify that when he was taken to jail by the deputy sheriff and Kresse, the Burlington special agent, the door was opened and Kresse said, "Get in there, you damned old son of a b———." Neither Filipczak nor any agent or representative of either defendant was present when this incident occurred. What Kresse said or did was not binding on either defendant. Although McCowan was a prisoner, he was entitled to fair treatment. Evidence of such unwarranted abuse of a prisoner is the parent of passion and prejudice, the probable effect of which was to cause the jury to believe that defendants should be punished for such conduct. The admission of such evidence against defendants, who were in no way responsible for such abuse was highly prejudicial and constituted reversible error.

Appellant next contends that the court erred in giving plaintiff's Instruction No. 1.

Respondent's theory of this case is that Filipczak's purpose was to search McCowan's home for goods which he thought had been stolen from defendant railroad, and when his efforts to obtain a warrant authorizing such a search failed, he induced the prosecuting attorney to issue a warrant authorizing a search for intoxicating liquors, by which warrant he and the officer gained admission to McCowan's home, searched it for stolen goods, arrested and imprisoned McCowan for the purpose of thereafter prosecuting him for the possession of such goods. In other words, the contention is that the warrant authorizing a search for liquor was used as a "subterfuge and a sham" to accomplish a purpose not authorized by the warrant.

Plaintiff's Instruction No. 1 told the jury, in substance, that if Filipczak while acting as agent of defendant railroad, entered McCowan's home, searched it for stolen goods, restrained him of his liberty in his home, denied or caused him to be denied the opportunity of giving bond and lodged him in jail, the verdict should be for plaintiff and against both defendants. The instruction then

concludes by telling the jury that although Filipczak was on the premises at the request of the deputy sheriff or for the purpose of assisting him in the execution of a search warrant for liquor, such facts would constitute no defense to either defendant.

McCowan was entitled to an opportunity to give bond whether he was arrested on a charge of possession of stolen goods or possession of intoxicating liquor. If defendants denied or caused him to be denied such opportunity and lodged him in jail, his imprisonment was unlawful and therefore false imprisonment for which defendants would be liable. If the instruction had submitted that issue unembarrassed by immaterial and prejudicial matters, a finding on that issue in plaintiff's favor would have authorized a verdict in his behalf. But the instruction as given was misleading and well calculated to cause the jury to believe that, if Filipczak and the officer used the warrant for the purpose of gaining admission to McCowan's home in order to search it for stolen goods and arrest and imprison him for the possession of such goods, plaintiff was entitled to recover because the warrant did not authorize a search for stolen goods or McCowan's arrest and imprisonment on such a charge. This conclusion is strengthened when the instruction is read in connection with plaintiff's Instruction No. 4, which reads:

"The search warrant read in evidence, nor any permission, authority or direction of Prosecuting Attorney Pulley, gave defendants Filipczak, Deputy Sheriff David, or other, the right to enter plaintiff's home and search for pretended or alleged stolen goods, or take from said home of plaintiff any goods, wares or things, other than intoxicating liquor, there being, or to arrest and incarcerate plaintiff in jail for the alleged having or being in his house stolen goods."

Summed up, the probable effect of these instructions was to cause the jury to understand that if the warrant was used as a "sham" to accomplish a purpose not authorized by the warrant, plaintiff was entitled to recover. Such is not the law. Plaintiff cites Fellows v. Goodman, 49 Mo. 62, in support of his contention. If the opinion in that case were still good law, it would be authority for plaintiff's contention, but that case was expressly overruled in the later case of Tiede v. Fuhr, 264 Mo. 622, 630, 175 S. W. 910, where we said:

"Dougherty v. Snyder, 97 Mo. App. 495, was an action for false imprisonment. The evidence showed plaintiff was taken in custody in a proceeding in which the probate court had jurisdiction of the subject-matter and acquired jurisdiction of the person in lawful manner. The court pointed out that malicious prosecution would lie in such a case if the proceeding had been prosecuted with malice and without probable cause, but that false imprisonment

was not the remedy in a case in which the proceedings were regular, whatever motive actuated the person who initiated them. In that case some doubt was cast upon the rule by a reference to the case of Fellows v. Goodman, 49 Mo. 62. In that case this court held that though the process regularly issued from a court, with full jurisdiction, yet the proceedings were patently a *sham* and false imprisonment would, on that account, lie. That case is anomalous. Any legal proceeding instituted from malice and without probable cause is a sham in the true sense. It is because it is in such sense a sham that an action for malicious prosecution lies. That extreme malice and absolute want of any sort of cause appear is no reason for holding that false imprisonment lies for abuse of process regularly issued and served, nor that bad faith either transforms regular process into void process or converts malicious prosecution into false imprisonment. It merely aggravates the damages for the malicious prosecution. The case of Fellows v. Goodman, in so far as it departs from this view, is unsound in principle and is overruled. Bad faith is not an esential element of false imprisonment. [Boeger v. Langenberg, 97 Mo. l. c. 396.]"

If, as respondent contends, the search warrant which only authorized a search for intoxicating liquors, was obtained and used as a *sham* for the purpose of accomplishing another and different purpose not authorized by the warrant, evidence of such conduct would support an action for malicious prosecution but not one for false imprisonment, therefore, plaintiff's instructions numbered 1 and 4 which tacitly, if not directly, recognize the *sham* theory were erroneous and prejudicial.

The second count of the petition is an alleged cause of action for slander. The pertinent part of the second count alleges, in substance, that defendant S. M. Filipczak, while acting as agent and servant of defendant railroad and while in the line of his duties and in the course of his employment, in the presence and hearing of other and divers persons, willfully, wantonly, maliciously and falsely spoke of and concerning the plaintiff certain false, defamatory and slanderous words, to-wit: "You are an old thief," "You are a damned old thief," "You are a thieving old son-of-a-b——," "You and your wife stole these goods from our box cars," "You stole these goods from the railroad" (meaning the box cars of defendant railroad and meaning goods which said defendant S. M. Filipczak then and there had present and pointed out).

McCowan testified that Filipczak spoke the alleged slanderous words to him in the presence of his wife. Filipczak denied speaking any such words. The goods referred to were goods discovered by the deputy sheriff, Filipczak and others while conducting the search of McCowan's home. McCowan testified that

the alleged slanderous words were spoken while the search was being made and at the time the goods were discovered.

Defendants requested and the court refused an instruction directing a verdict in favor of defendants. This action is assigned as error. Appellants contend that the court erred in refusing to direct a verdict in their behalf, because there was no proof of publication of the alleged slanderous words.

Slander has been defined to be, "the speaking of base and defamatory words which tend to the prejudice of the reputation, office, trade, business or means of getting a living of another." [36 C. J. 1146, sec. 4.] "Publication, in the law of defamation, is the communication of defamatory matter to a third person. Since the basis of an action for defamation is damages for the injury to character in the opinion of other men, in order to render defamation of any kind actionable, there must be a publication thereof." [36 C. J. 1223, sec. 169.]

Respondent contends that the speaking of the alleged defamatory words in the presence and hearing of McCowan's wife was a publication. On the other hand, appellants contend that the alleged defamatory words, "You and your wife stole these goods from our box cars," was a joint slander of McCowan and his wife and for that reason the wife was not a third person for the purpose of publication.

There is no question but that words defamatory of the husband alone, spoken in the presence and hearing of his wife, would be a publication. In that situation, the wife would be a third person within the meaning of the law of publication, because the alleged defamatory words would have been no application to her and she would not be connected with the defamation in any way. But such is not the situation in this case. Here the alleged slanderous words charged the husband and wife with the joint commission of a theft. The language is, *"You and your wife stole these goods from our box car."* While some of the alleged defamatory words, if standing alone, would refer only to the husband, i. e., "You are an old thief," but the entire accusation must be read together. The specific charge that he and his wife stole the goods, qualifies the general language of the accusation, shows why the accuser called him a thief and characterizes the entire accusation as a charge that he and his wife jointly stole the goods in question. If "publication," in the law of defamation, is the communication of defamatory matter to a third person, that is, to some person other than the one accused, it must follow that there was no publication in this case, because the wife, being accused jointly with her husband, was not a third party within the meaning of the law of publication. Our conclusion finds support in Wrought Iron Range Co. v. Boltz,

123 Miss. 550. Respondent. cites Marble v. Chapin, 132 Mass. 225, as announcing a contrary doctrine, but we think the Mississippi case announces the better rule. We therefore hold that the court erred in refusing to direct a verdict for defendants under the second count of the petition for the reason that there was no evidence tending to show publication of the alleged slander.

For the reasons heretofore stated, the judgment under the first count of the petition should be reversed and remanded, and the judgment under the second count should be reversed outright. It is so ordered. All concur.