**MATHEWSON et al. v. FIRST TRUST CO. OF ST. JOSEPH, MO.***

No. 11237.

Circuit Court of Appeals, Eighth Circuit.

Dec. 15, 1938.

Jacob A. Overlander, of New York City (Elliott Spalding, of St. Joseph, Mo., on the brief), for appellants.

Benjamin Phillip, of St. Joseph, Mo. (R. E. Culver, B. L. Kaufmann, and Francis Smith, all of St. Joseph, Mo., on the brief), for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity brought by the appellant Jacob A. Overlander against the appellee, First Trust Company, of St. Joseph, Missouri. While John E. Mathewson, as Administrator with the will annexed, is named in the caption of the pleadings as a plaintiff, an examination of the amended bill of complaint discloses that no right is asserted by or for him, and the bill of complaint does not even contain any allegation as to his citizenship. In his brief, appellant says: "By including the assignor in the title his elimination was of no moment and the trial proceeded without him."

As a matter of convenience, the parties will be referred to as they appeared in the court below.

It is said in appellant's brief that the suit was one for an accounting against a trustee of an express trust "to whom had been transferred by trust deed rights to properties that came under its control and management, and over which it must exercise certain duties specified in the deeds of trust, according to the terms thereof." The record is voluminous, and a somewhat detailed statement of the facts would seem to be necessary.

Charles Knabb, a banker living in Hiawatha, Kansas, on October 4, 1913, executed a deed of trust to E. C. Wheelock, as trustee, to secure his indebtedness to a number of named creditors, conveying lands in Brown County, Kansas. Knabb at the time was insolvent. A conference of his bank creditors and the creditors secured by this deed of trust resulted in a proposition that unless these creditors would release their security and accept a deed of trust executed by Knabb to the First Trust Company to secure all his creditors ratably, bankruptcy proceedings would be instituted. These creditors acquiesced in this demand and released their security on November 20, 1913. On the same date, Knabb executed a trust deed to the First Trust Company as trustee, to secure the payment of certain debts owed by Knabb and debts which he assumed and became obligated to pay to creditors named in that instrument. This mortgage, or deed of trust, conveyed cer-

*Rehearing denied Jan. 12, 1939.

tain lands in Brown County, Kansas, and other properties in Kansas and Colorado.

On the same date, Knabb executed a deed of trust to the First Trust Company and R. T. Forbes, securing ratably all of his creditors. This deed of trust covered extensive land holdings in Ochiltree County, Texas. Thereafter, Knabb executed deeds of trust to J. S. Hood to secure his indebtedness to the creditors who had released their mortgage on the Brown County lands; to-wit, Rufus B. Overlander, J. S. Hood, Edward C. Wheelock, Hulda B. Edgerton, and Agnes J. Richmond. Knabb also conveyed certain land to Harvey E. Hoover. All of these conveyances were made and recorded long after the deed of trust to Forbes was recorded.

Knabb moved to Texas, where he instituted proceedings to perpetuate his testimony, to be used in a suit thereafter to be filed, for the purpose of proving that the deed of trust executed to Forbes had been obtained by force and threats, with the object of establishing the mortgages given to Hood as trustee as first liens upon the Texas property. Upon learning this fact, Forbes instituted a suit in the Federal court at Amarillo, Texas, against Knabb, Hood, Overlander, Hoover, Wheelock, Edgerton, Murphy, McGuire, Nolan and others, to foreclose the Texas deed of trust, alleging that it was a first lien upon the property and that the deed to Hoover and the deeds of trust given to Hood as trustee, were subsequent. Hoover, who was an attorney, conferred with Forbes, his attorney, and the bank creditors, with a view of bringing about a settlement of the litigation. It was finally arranged that the Forbes deed of trust would be foreclosed as a first lien, and the deeds of trust to Hood, trustee, foreclosed as subsequent liens or released, or that Hoover would release his interest in the land conveyed to him by deed, which was in fact a mortgage, or that the property should be sold under foreclosure, Hoover to receive $1,000 for the release of his claim, and that he would find a purchaser who would guarantee to bid $11.50 per acre cash for the property.

All the defendants in that case, including R. B. Overlander, filed their written entry of appearance, and admitted the allegations of the bill. The deed of trust was adjudged a first lien and ordered foreclosed. A commissioner was appointed to ascertain and report the amount of indebtedness due to each creditor. The commissioner made such report, which the court confirmed and entered decree adjudging the amount due each creditor and ordering the payment of certain expenses incurred in connection with the litigation.

Hoover produced a purchaser in accordance with his promise, who paid $75,348 for the property. All of the moneys received, either by the First Trust Company or Forbes, were disbursed in accordance with orders of court. None of the creditors were paid in full. Some realized a larger percent of their claims than others, because some had securities, which others did not have.

Rufus B. Overlander thereafter died and a part of the debt owing him was unpaid. On February 7, 1921, James E. Mathewson, as administrator with will annexed, and Jacob A. Overlander, as assignee, instituted this suit against the First Trust Company, as trustee, and Richard T. Forbes, trustee, alleging that each of them had failed in the performance of their respective trusts. The suit was dismissed as to Forbes, and it was apparently allowed to slumber for fifteen years before plaintiff Overlander appeared and filed an amended bill.

The charges against the First Trust Company, as set out in the amended bill, are to the effect that the Trust Company failed to make full distribution of trust funds received; that it fraudulently secured a release of the Hood trust deed, thereby making it subsequent to the deed to the First Trust Company; that it dealt in the subject of the trust at a profit, which it should be required to account for; that it had made payments of trust funds unwarranted by the terms of the trust, and committed other breaches of its duty as trustee.

The court entered specific findings in which it found all the facts in favor of the defendant on every contention urged, and entered conclusions of law determining all the law issues in favor of the defendant, and thereupon entered decree dismissing the amended bill of complaint.

■■ At the very threshold of the case we are confronted with the question of the sufficiency of the record. Rule 14 of this court provides, among other things, that appellant's brief shall contain "a separate and particular statement of each assignment of error (in criminal and bankruptcy cases) or of each point relied upon (in civil cases), intended to be urged, with the record page thereof * * *." In ap-

123

pellant's brief, we find a heading "Assignment of Errors." This is immediately followed by the statement that, "Complainants will rely upon all of the assignments of errors, together with subdivisions, wherever appearing and argument will cover all legal points summarized therein." Then follows statement that additional assignments of error were filed May 21, 1938; then the statement that, "Assignment of Error No. 1 is fully covered and answered by reference to complainants' proposed findings of facts Nos. 1, 2 and 3 (R. pp. 467–8 and Petition for Rehearing under Rule 69 of the Rules of Equity Nos. 1(a), (b), (c), etc." There is not a single assignment or specification of error set out in the brief. Error, though assigned, if not specified in the brief, as required by this rule, will be considered as abandoned. Wabash Ry. Co. v. Lindley, 8 Cir., 29 F.2d 829.

In this condition of the record, we are warranted in affirming the decision of the lower court, or dismissing the appeal. Hard & Rand v. Biston Coffee Co., 8 Cir., 41 F.2d 625; Harrow-Taylor Butter Co. v. Crooks, 8 Cir., 41 F.2d 627; Western Assurance Co. v. Polk, 8 Cir., 104 F. 649; Moline Trust & Savings Bank v. Wylie, 8 Cir., 149 F. 734. We shall, however, refer to a few matters which seem to us clearly to preclude any right to recover in this suit.

The only right which plaintiff seeks to assert is one which may have vested in his father, Rufus B. Overlander, who died testate on January 15, 1919. His will was probated in Brown County, Kansas, and John E. Mathewson was appointed administrator with the will annexed on January 31, 1919. Plaintiff produced a written document reciting the consideration of $10, by which the administrator purported to sell, assign, release, transfer, and set over to Jacob A. Overlander all the right, title, interest, claim and demand which has or may have vested in him by virtue of his appointment as administrator, in and to a certain promissory note made and delivered to R. B. Overlander by Charles Knabb and William Knabb, in the sum of $4005, "as well as all the right, title, interest, claim and demand which has or may have vested in him by virtue of like authority as aforesaid, of, in and to a judgment duly entered in the office of the Clerk of the United States District Court of the Northern District of Texas, Amarillo Division, on the 12th day of June, 1917, in favor of Richard

T. Forbes, complainant, and against Charles Knabb, et al., defendants, * * * for the use, purpose, and benefit of R. B. Overlander, in the sum of $2,794.56."

This property was not devised to the plaintiff by the will of his father. The residue of his father's estate was given and bequeathed to five sons, of whom the plaintiff was one, to have and hold in equal shares. The court found, and the proof without dispute showed, that this assignment was made without any order or authority of the Probate Court of Brown County, Kansas, where the estate was being administered, and that it did not confer any authority upon plaintiff to institute or prosecute this action, and was void; and the court declared as a matter of law that this assignment vested no title in the plaintiff Overlander. It is, however, urged by plaintiff that he was entitled to prosecute this suit as an heir or devisee of his deceased father, but a glance at the will indicates that if this property was conveyed by the will, it was devised to the five brothers, share and share alike. It also appears in the record that before the execution of this assignment, the administrator had been discharged.

Section 4553, General Statutes of Kansas, 1915, empowers the administrator to sell personal property at public sale, unless the court makes an order to sell at private sale. The testimony of the probate judge, which was undisputed, was to the effect that there was no order made authorizing or directing the administrator to make this so-called assignment. The Supreme Court of Kansas, in Rossman v. Christenson, 117 Kan. 41, 230 P. 72, in construing the above cited Kansas statute, said [page 73]: "The records of the probate court disclosed no order authorizing the sale, transfer, or assignment of the note and mortgage in question. The probate judge testified that he had been in office since January, 1921; * * * that he (the probate judge) had never made an order authorizing the executor to sell or assign the mortgage. * * * The facts not only fail to disclose a sale, but clearly show that there was no authorized or valid sale. To have made a private sale of the note and mortgage would have required an order of the probate court. None was made. On the other hand, the evidence not only disclosed no public sale, but dispels any conclusion that there could have been one."

The answer to the amended bill denied the allegation that Mathewson was ad-

ministrator at the time this instrument was executed. While the plaintiff, we think, had no standing in the lower court and is equally without standing in this court, yet the nature of the charges made by him should not be disposed of on technical grounds, and, doubtless, for that reason the lower court carefully considered every allegation of fraud and found that there was no evidence sustaining any of the claims asserted against the defendant.

We have laboriously gone through the record in this case and find that the decision of the lower court is sustained by abundant evidence. The decree appealed from is therefore affirmed.