**STATE OF MISSOURI ex rel. and to Use of DE VAULT v. FIDELITY & CASUALTY CO. OF NEW YORK.**

No. 11434.

Circuit Court of Appeals, Eighth Circuit.

Nov. 8, 1939.

Oscar B. Elam, of Kansas City, Mo., for appellant.

Ben W. Swofford, of Kansas City, Mo. (Mitchel J. Henderson and Thomas E. Deacy, both of Kansas City, Mo., on the brief), for appellee.

Before THOMAS and VAN VALKENBURGH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Suit was brought by the above named relator against the defendant as surety on a fidelity bond given by James L. Williams, sheriff, for certain acts of the sheriff, his deputies and others, which relator alleges constituted a conspiracy resulting in his injury and damage.

The trial court sustained a motion to dismiss on the ground that the amended complaint did not state facts upon which relief could be granted. From this order and for errors which it is alleged were committed by the court on matters of procedure, the relator, whom we will refer to as the plaintiff, has appealed.

Plaintiff contends that the record discloses, and as a matter of substantive right, he is entitled to a default against the defendant and a jury to assess his damages.

On October 15, 1938, the plaintiff filed an amended complaint which is here for review.

On October 22, 1938, the defendant filed a demurrer charging that this complaint did not contain facts sufficient to constitute a cause of action.

On October 31, 1938, the plaintiff filed a motion to strike this demurrer and a motion for an interlocutory judgment by default.

On November 4, 1938, the District Court sustained the motion to strike the demurrer and denied plaintiff's request for a default judgment and granted the defendant five days to plead.

On November 9, 1938, the plaintiff filed a motion to set aside the order of November 4, 1938, and on the same date the defendant filed its answer to the amended complaint and separately a motion for judgment on the pleadings.

The motion for judgment on the pleadings charged, among other things that the complaint does not state facts upon which relief can be granted and does not state facts which constitute any cause of action against the defendant. This motion was sustained and plaintiff was granted ten days to file another amended complaint; and plaintiff, having failed and refused to further plead, the court ordered the action dismissed with prejudice.

It is the theory of the plaintiff that as the new Rules of Civil Procedure, 28 U.S. C.A. following section 723c, abolished demurrers, the demurrer which was stricken did not constitute a pleading and hence no pleading was on file at the time he filed his motion for an interlocutory judgment and he is entitled to a default and to have a jury called to assess damages on such default.

There was a demurrer to the original complaint which was sustained. Between the time of that order and the filing of the demurrer to the amended complaint the new Rules of Civil Procedure for federal courts had become in force. The second demurrer contained the charge that the amended complaint did not state facts upon which relief could be granted. As the defendant had already appeared, a default judgment could only be obtained by application to the court. Rule 55 (b) (2). The only difference between the demurrer and a motion to dismiss was therefore in the designation of the pleading and this difference was a matter of form rather than of substance. The circumstances did not show any lack of good faith and had the court entered a judgment by default at the time he struck the demurrer from the record, he would no doubt have set the default aside under these circumstances.

■ There is nothing in the rules to uphold plaintiff's contention, while on the other hand Rule 55 provides in effect that defaults to be effective must be applied for and granted by the court. That the granting of a default is discretionary is indicated by Rule 55 (c) which authorizes the court to set aside an entry of default on a showing of good cause.

■ "The default of a party to an action is always a harsh measure, and no party

should ever be defaulted, unless the grounds upon which such default is authorized are clearly and authoritatively established and are in such clear and certain terms that the party to be defaulted can know, without question, that he is subject to default if he does not act in a certain manner." Janoske v. Porter, 7 Cir., 64 F.2d 958, 960. 34 C.J. p. 147, § 349.

Nor is there any merit in plaintiff's contention that the court was without jurisdiction to rule upon the motion to dismiss contained in the motion for judgment on the pleadings as such procedure is expressly authorized by 12 (h) of the Rules of Civil Procedure, which contains the following:

"A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except (1) that the defense of failure to state a claim upon which relief can be granted * * * may also be made * * by motion for judgment on the pleadings * * * ."

We agree with the plaintiff that the action of the court in dismissing plaintiff's petition on the ground that it failed to state a claim upon which relief could be granted was a denial of plaintiff's motion for an order setting aside the order of November 4, 1938; but there was no error in the court inferentially overruling this motion of the plaintiff to set aside the order, nor has plaintiff shown the defendant to be in default.

A more serious question is presented as to whether in the amended complaint are facts which constitute any cause of action against the defendant.

It is unnecessary to set out all of the amended complaint. Plaintiff alleges therein that the condition of the sheriff's bond provided that "if the said James L. Williams shall faithfully perform his duties then this obligation to be void, otherwise to remain in full force and effect." And after jurisdictional grounds he alleges that James L. Williams was the sheriff of Jackson County, Missouri, and that one Clark Johnson was deputy sheriff and that said deputy sheriff, together with one Thomas E. Glynn, a county investigator, and other evil minded persons are and at all times mentioned and referred to have been in a scheme and conspiracy to commit an offense against the laws of the State of Missouri by causing and procuring divers and sundry citizens of Missouri to be unlawfully deprived of their liberties; and specifically as to this charge, he states that one Ruth McLaughlin was unlawfully seized and unlawfully imprisoned without notice of hearing or any due process of law, and in Paragraph VI of his complaint that—

"he was attorney and counselor for said Ruth McLaughlin in said habeas corpus proceedings and well known to be such to said James L. Williams, Sheriff, and to said Johnson, Deputy Sheriff, under appointment of said Williams; and on a day in the month of May, A. D., 1937, when some steps in said habeas corpus proceeding were to be taken in said Kansas City Court of Appeals, Relator was at the Court House of Jackson County, Missouri, where said Kansas City Court of Appeals convenes and holds court, and was awaiting the arrival of the Judge and Commissioners of the Court, and Relator's said client was there and said Clark Johnson was there and a large number of other persons were present; and under and in pursuance of said scheme and conspiracy and under color of his said office of deputy sheriff, and under authority of said Sheriff James L. Williams, said Clark Johnson did then and there publicly in the presence, sight and hearing of many people and in a commanding and threatening manner, and without warrant or other lawful authority, place Relator under arrest and deprive Relator of his liberty and compelled Relator to stand still and compelled Relator to throw up the hands of Relator high above the head of Relator and to keep them so while submitting the person of Relator to the rough manhandling of said deputy sheriff Johnson under the false pretense of said Johnson that he was searching the person of Relator for dangerous and deadly weapons feloniously concealed upon the person of Relator, although Relator was not guilty of such or any other offense and said Johnson and said Williams and said co-conspirators at all times had actual notice of the said innocence of Relator.

"Relator states that said Johnson would not have so conducted himself toward Relator except under color of his office of deputy sheriff.

"VII. Relator states that in furtherance of said scheme and conspiracy plaintiff was thereafter arrested September 14, 1937, on a warrant issued by a justice of

the peace on a charge of disturbing the peace and was in custody of said James L. Williams, Sheriff, and his deputy sheriffs and his Jailor and was at all times able, ready and willing to make bail for his release from custody and tendered such bail and under and in pursuance of said scheme and conspiracy said James L. Williams and his deputy sheriffs at all times denied Relator opportunity to make bail and so unlawfully held Relator in custody for about thirty days in the jail of Jackson County, Missouri, at Kansas City, until said proceeding against Relator was dismissed.

"VIII. Relator further states that September 14, 1937, under and in pursuance of said scheme and conspiracy a proceeding was instituted in the County Court of said Jackson County, Missouri, the object and general purpose of which was to have Relator adjudged by said County Court to be insane and committed to one of the Missouri State Hospitals, and said James L. Williams and his deputy sheriffs were in custody of the body of Relator under authority of the said warrant of the said justice of the peace; and under and in pursuance of said scheme and conspiracy and without lawful authority and against the will of Relator said James L. Williams and his deputy sheriffs in charge of said Jail and under color of office as aforesaid wilfully, wantonly and maliciously admitted into said jail one of the said co-conspirators, one Dr. B. Landis Elliott, to interview Relator with the purpose, intent and result of making the interview the basis of false and perjured testimony of said Elliott to be given and afterwards given by said Elliott in said County Court against Relator in said insanity proceeding; and under and in pursuance of said scheme and conspiracy and without lawful authority said James L. Williams and his deputy sheriffs, under color of office as aforesaid, on September 20, 1937, and again on September 27, 1937, took relator from said jail and conducted him publicly as a prisoner through the public thoroughfares of Kansas City, Jackson County and Independence to the Court House in Independence and back again to Kansas City.

"IX. Relator further states that each and every and all of the said unlawful acts of said James L. Williams, and his said several deputies were wilful, wanton and malicious and in aid of the said conspiracy and with the further purpose and intent and consequence, effect and result of obstructing justice and destroying Relator in his good name, fame, credit and standing * * *."

And he asks' damages in a sum equal to the amount of the sheriff's bond of $50,000.

█ Appellee asks that the court dismiss the appeal for the reason that appellant filed no assignments of error and appellant's brief does not comply with Rule No. 14 of this court, in that it contains no assignments of error or points relied upon and contains no reference to the pages of the record, and cites the following decisions of this court: Mathewson v. First Trust Co., 8 Cir., 100 F.2d 121; Hard & Rand v. Biston Coffee Co., 8 Cir., 41 F.2d 625; Harrow-Taylor Butter Co. v. Crooks, 8 Cir., 41 F.2d 627; Western Assurance Co. v. Polk, 104 F. 649; Moline Trust & Savings Bank v. Wylie, 8 Cir., 149 F. 734.

The plaintiff does however set out in the record and in his brief what he designates as Statement of Points, and while they do not constitute "points relied upon intended to be urged, with the record page thereof," and are voluminous, consisting of 28 such statements together with 18 subdivisions and constitute mere statements of alleged facts or rules of law with supporting authorities, yet it may be readily determined therefrom that he has relied upon three general propositions for a reversal:

1st. That the defendant is in default for failure to file a proper pleading within the time as directed by the court or authorized by the rules of Civil Procedure.

2nd. That his amended complaint does state a claim upon which relief could be granted.

3d. That plaintiff is entitled to recover as against the defendant surety for the act or acts of the sheriff and his deputies, done under color of their office.

The petition contains so much that is immaterial and redundant, is so prolix and devoid of merit as a simple, concise and direct pleading as the rules and good pleading require, that it might well be stricken, yet running through its charging part is the gravamen of the complaint that the plaintiff has been deprived of his liberties through unlawful and malicious acts of deputy sheriffs and challenges our atten-

tion whether he should be told to go hence without a hearing.

We are satisfied that the specific acts alleged do not show any conspiracy. The details as to what constitutes the alleged conspiracy disclose independent rather than concerted action. It is noted that the complaint alleges that a deputy sheriff, Clark Johnson, and a county investigator, Thomas E. Glynn, and other evil minded persons, not naming them, were engaged in a conspiracy as against the plaintiff. Yet the name of Thomas E. Glynn is not again brought into the picture and the complaint does not say what was the scheme and conspiracy, that is, as to what, if any, agreement or understanding there was among the conspirators, nor does it set out that any damage was caused to the plaintiff by any two or more persons acting in concert.

A civil conspiracy is said to be a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object; or a lawful object by unlawful or oppressive means. To sustain such an action damages must have resulted from the combination. Harelson v. Tyler, 281 Mo. 383, 219 S.W. 908.

It is the action of two or more persons working under an agreement or understanding, or under a preconceived plan, or in combination to do an unlawful act or to do a lawful act by unlawful means See 15 C.J.S., Conspiracy, § 2, p. 997.

For many purposes a sheriff and his deputies are regarded in law as one officer, and this rule applies here as it is sought to hold the sureties on the sheriff's bond for acts of the deputies as officials and as acts of the sheriff himself.

The plaintiff has wholly failed to set out charges of conspiracy as against the sheriff and no doubt the trial court was actuated by such a finding when it sustained the motion to dismiss. However, a casual reading of the petition discloses that plaintiff's real complaint is based upon the actions of the sheriff and his deputies in depriving him of his liberties. And this is the gravamen or gist of the action.

"An allegation of conspiracy becomes important only as it may affect the means and measure of redress. It may be pleaded and proved only in aggravation of the wrong of which plaintiff complains, or for the purpose of enabling him to recover against all the conspirators as joint tort-feasors, or for the purpose of holding one defendant responsible for the acts of his co-conspirators. Such allegation is a mere matter of inducement leading up to the relation of the acts from which conspiracy may be inferred, and does not change the nature of the action from one purely on the case, subject to all the settled rules of such action, or add anything to its legal force and effect." 15 C.J.S., Conspiracy, § 25, p. 1038.

And these rules are followed by this court in Barry v. Legler, 8 Cir., 39 F.2d 297, 302, where the court said: "The allegation of conspiracy in an action for tort which may be committed without a conspiracy, or plurality of tort-feasors, is mere matter of inducement and evidence, and, though a conspiracy be not shown, recovery may be had against the defendant, or defendants, participating in the tort. The gist of the action is not the conspiracy, but the damage done to the plaintiff by the acts of the defendants. The averment of the conspiracy does not change the form of action, which is an action on the case."

From the above it is apparent that if the complaint sets out a cause of action the conspiracy charge may be disregarded and hearing had on any action or actions properly plead. We therefore have to determine whether there is in the petition a charge upon which recovery may be had against the surety.

Plaintiff claims the amended complaint does set out the following, which he contends constitute causes of action against the defendant:

1st. That deputy sheriff Williams arrested the plaintiff and searched him on a charge that he was carrying concealed weapons when such deputy knew that plaintiff was not guilty of the crime of carrying concealed weapons or any other crime.

2nd. That the sheriff and his deputies refused to afford plaintiff under arrest for a misdemeanor an opportunity to make bail, although he was at all times able, ready and willing to make bail for his release from custody.

3d. That the sheriff and his deputies paraded plaintiff in custody through the thoroughfares of Kansas City, Jackson County, and Independence, Missouri, without lawful authority, to his disgrace and humiliation.

4th. That the sheriff and his deputies admitted a doctor into the jail where the plaintiff was confined to permit the doctor to obtain false evidence in a future hearing against him.

It is the contention of the appellee that none of these constitute a cause of action as against the surety defendant. As to the first alleged ground the appellee insists that there is no allegation that the deputy sheriff did not have reasons to believe that the plaintiff was guilty of a felony in carrying concealed weapons. However, the charge does allege in effect that the deputy sheriff at the time of the arrest and search knew that he did not have weapons on him.

Appellee claims also that under this and the other alleged causes of action, if the sheriff or his deputies were acting beyond the scope of their lawful authority, then the surety on the bond cannot be held. It may be conceded that in former decisions, and some from this court, a defendant surety might not be held to be responsible for damages under the situation as presented in paragraph VI of the amended complaint. Murray v. Low, 9 Cir., 8 F.2d 352, citing with excerpts from Chandler v. Rutherford, 8 Cir., 101 F. 774, 777, 778.

■ The strict interpretation of sureties' liability on fidelity bonds however has been modified by recent decisions with the change from personal to commercial sureties. A discussion of these changes in the liability of sheriffs and their deputies to the bondsmen of the sheriff is found in 24 R.C.L. p. 965, § 59, which most of the recent cases cite. In that text it is said: "The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? If he assumed to act as an officer—whether under valid or void process, or under no process whatever—the bondsmen should be held, as he is held, for they are the sponsors of his integrity as an officer while acting as such." See, also, Geros v. Harries, 65 Utah 227, 236 P. 220, and 39 A.L.R. 1297, with annotations 1306.

■ Questions of liability of the sureties on this official bond are determined by the law of Missouri. City of Beckley v. Moran, 4 Cir., 61 F.2d 238; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In State ex rel. and to Use of Kaercher v. Roth, 330 Mo. 105, 49 S.W.2d 109, the Supreme Court of Missouri, after carefully considering the changed attitude of the courts towards this question and reviewing the authorities, adopted the modified rule as appears above.

Clearly if the acts complained of are attributable to the sheriff, the facts set out in paragraph VI of the plaintiff's amended complaint constitute a cause of action under this rule of law.

And this brings us to the question whether the sureties on the fidelity bond of a sheriff are liable for an arrest by a deputy sheriff without a warrant and without reasonable cause to the same extent as if it had been done and performed by the sheriff himself. And this question appears to relate to the same rules of liability as does the responsibility of the sheriff.

■ "It is a general and well established rule that a sheriff is liable for all acts done by his deputy as such; but the authorities are far from being harmonious as to the exact scope of this rule in particular instances. The same questions arise in considering the rules relating to deputies as in determining the liability of a sheriff's sureties, for in a sense the sheriff is a surety or a legal sponsor for the acts of his deputy." 24 R.C.L. 981, § 75.

■ As the Supreme Court of Missouri has held sheriffs responsible for such unlawful arrests, it would seem to follow that the sureties on the bond of the sheriff would be equally responsible for such acts on the part of the deputies. And this rule is supported by recent authorities. Dean v. Brannon, 139 Miss. 312, 104 So. 173; 39 A.L.R. 1307; Brown v. Weaver, 76 Miss. 7, 23 So. 388, 42 L.R.A. 423, 71 Am. St.Rep. 512; Helegson v. Powell, 54 Idaho, 667, 34 P.2d 957.

■ We are constrained to hold that under the decision of State ex rel. and to Use of Kaercher v. Roth, supra, the amended complaint in paragraph VI has set out a claim upon which relief can be granted, and it is one of the claims which is the gravamen of plaintiff's complaint.

The second charge appears to state a cause of action under the laws of Missouri. In the case of Harbison v. Chicago, R. I. & P. R. Co., 327 Mo. 440, at page 451, 37 S.W.2d 609, 613, 79 A.L.R. 1, that court said: "It was the duty of the deputy

sheriff to afford McCowan an opportunity to give bond, and, if he wrongfully denied him such opportunity his imprisonment thereafter was unlawful, and therefore false imprisonment, for which the deputy sheriff would be liable."

 Whether the last two charges above set out constitute a cause or causes of action for abuse of process, it is not necessary for us to now determine as the action of the trial court in dismissing the amended complaint will have to be reversed, and the trial court, if these questions again arise, can after arguments determine such questions under the Missouri law.

The Rules of Civil Procedure provide among other things: "A party may also state as many separate claims * * * as he has regardless of consistency." Rule 8(e) (2).

Considering the entire complaint, we are satisfied that the gist or gravamen of plaintiff's petition is that he was maliciously deprived of his liberty and that the trial court erred in sustaining defendant's motion to dismiss and denying the plaintiff a right to a hearing on their merits of any cause or causes of action properly alleged in the amended complaint.

Reversed.