Jerry S. LIBRACH, Respondent,

v.

Orion J. LITZINGER, Appellant.

No. 51426.

Supreme Court of Missouri,
Division No. 1.

March 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied and Opinion Modified on Courts Own Motion April 11, 1966.

Robert Nagel Jones, St. Louis, Gentry, Bryant & Sheppard, Arnot L. Sheppard, St. Louis, for respondent.

Donald J. Stohr, St. Louis County Counselor, Joseph B. Moore, Deputy County Counselor, Thomas W. Wehrle, Associate County Counselor, Lovell W. George, Clayton, for appellant.

HYDE, Judge.

Action for damages for false imprisonment ($10,000.00 actual and $40,000.00 punitive) against the sheriff of St. Louis County, who was out of office when the case was tried. There was a directed verdict denying plaintiff's claim against a third party for maliciously instigating the arrest and judgment for the third party became final on overruling plaintiff's motion for new trial as to him, with no appeal from this judgment. The jury's verdict was for the sheriff (hereinafter called defendant) but the trial court sustained plaintiff's motion for new trial for error in giving Instruction No. 7 and defendant has appealed from the order granting a new trial.

Defendant contends that plaintiff failed to make a submissible case against him and also claims Instruction 7 was a proper instruction. Plaintiff was arrested on a warrant issued by the Magistrate Court of Phelps County, Missouri. The charge was "stealing parts, repairs and mechanic labor of the reasonable value of $153.50" because plaintiff had stopped payment on a check given for repairs on his automobile there, claiming ineffective repairs. The warrant was received in the mail by defendant a day or two before plaintiff was

arrested, probably September 7 or 8, 1957. Plaintiff was arrested at his home by two of defendant's deputies after ten o'clock, the night of September 9th, and received at the jail at 10:58 P.M. Plaintiff's cousin, Max Librach, a lawyer, came to defendant's office about 11:00 P.M., plaintiff's wife having informed him of the arrest. A few minutes later the father and mother of plaintiff's wife, owners of real estate in St. Louis County, arrived to sign a bond. Max called a magistrate of the county, Judge William H. Preiss, who set bond at $1000.00. Max then said to the deputy in charge: "Judge Preiss informed me that he is ready, willing and able to approve a bond in the sum of one thousand dollars for Jerry Librach, * * * either we come over to his home or he will come over to the courthouse. He would prefer that we come to his home because he had already put on his night clothes and was watching television." Max said the deputy said: " 'Well, the man can't be admitted to bond.' I said, 'Why not?' 'It's after five o'clock,' was his answer." Max said he then got the deputy to call defendant and after talking to defendant the deputy said: " 'The Sheriff won't do it.' " However, the deputy then let him call defendant; and Max said in this conversation he told defendant he had the necessary qualified sureties; that " 'I talked to Judge Preiss, who is waiting at his home for a telephone call from me, either we go over there or he will come here, * * *.' He said, 'The answer is no. I have a rule that no one gets out of jail after five o'clock, and that applies to you as well as anyone else.' " Max further testified he then said: " 'I am merely asking you, Sheriff, that you admit this man to bond or provide him the opportunity to be admitted to bond.' And he said, 'Max, that's my orders, that's my ruling, and that's it.' And he hung up."

Plaintiff corroborated Max to the extent that he heard his part of these telephone conversations. He was kept in jail until about 9:30 the next morning when he ap-

peared before Judge Preiss and was released on bond. Judge Preiss said he called defendant and told him about his call from Max; but defendant said "their practice is not to release any prisoners from * * * I don't know whether it was six p.m. until morning or whether it was five p.m." He gave Max this message and said, "I took it for granted that he wouldn't be released by the Sheriff's office and I didn't do anything further about it." Judge Preiss further testified: "I sort of frown on working at night and day, too, in connection with the office. I didn't want to go out to Clayton unless I had to. * * * However, I know that on some occasions, why, it has happened I come out to the office at night, but I think it was subsequent to that time. * * * I wanted to find out whether he would be released, and he (defendant) told me that their practice is, when warrants are issued outside of the county like this one was, that they do not release them until the morning. And I just took the position that, regardless of what I would have done, that he would not have been released. However, it may be that I could have * * * should have requested him to bring the prisoner before me or come out to Clayton. But I didn't do that."

Defendant's answer stated: "[N]either he, nor any of his deputies, ever refused to take a prisoner before a judge of the circuit court, or before a judge of the magistrate court of said county, upon being requested so to do, for the purpose of having the question of admissibility to bail determined, and that, in point of fact, it was standard procedure to do so without regard to the hour of the day or night where, as in the instant case, a Sheriff is not authorized by law to pass on the acceptability of a proffered bail bond."

Defendant testified that he received the calls from Max and Judge Preiss; that Judge Preiss told him he had set a bond for plaintiff at $1000.00; that he "said to Judge Preiss over the telephone that the prisoner was there and available; if he or any other magistrate would approve a bond, I would deliver the prisoner whereever they so designated. And there was no request made for me to deliver the prisoner anywhere;" and that he "received the second telephone call from Judge Preiss. Judge Preiss informed me that it was then after midnight, and that he was ready to retire and that he would approve the bond later on that morning." Defendant said he told Max he could not take a bond on a warrant from another county but that "it was a matter for the magistrate or a circuit judge to approve this bond." However, he also testified: "Q Do you remember what he said to you? A He said that he wanted to get his nephew released on bond. Q Yes; and he told you that he had arranged with a magistrate to do that; didn't he? A Yes, sir; he told me that he had talked to Judge Preiss. Q And Judge Preiss fixed the amount of bond? A That's what Max Librach said. Q Yes, I know. And that he had the persons there to sign the bond. A Yes, sir. * * * Q What did you say to him? Just tell us what you said to him. A I said to Max Librach that the Sheriff was not permitted to take a fugitive bond. (Defendant meant by "fugitive bond" a bond on a warrant from another county.) * * * Q Mr. Litzinger, did you have deputies available at all hours of the night and the day just for such things as making bonds late at night? A We always had at least one man. I, myself, was usually available. Q Well, I understand your answer then is yes? A Yes. Q The hour of the night had nothing to do with it. You had men available to make bonds at any hour of the night. * * * To produce the arrested persons and permit them to make bond, for the purpose of making bond. That is right, isn't it? * * * A Not any hour. But within a reasonable time, I would have to say yes. If the men were out on something else, maybe a

half-hour or so until they get back to the office, or something of that sort." Parenthetical insertions ours.

It appears from an offer of proof that defendant's five o'clock rule applied to bonds the sheriff could approve (see Criminal Rule 32.03) because the recorder's office would be closed and "it would be impossible for our office to check through the recorder's office whether or not that party was a valid owner of a parcel of real estate that they claimed or were using as collateral for a bond." Although Max was trying to get defendant to take plaintiff before Judge Preiss to make bond, defendant apparently was refusing for the reason that he as sheriff could not take the bond because the warrant was from another county. It does not appear that defendant claimed to have given Max any other reason.

■ ■ Defendant argues that plaintiff did not make a submissible case because defendant did not have authority to admit plaintiff to bail under Criminal Rule 21.13. This is immaterial because a reasonable view of the evidence is that Max had arranged for a magistrate and was not asking defendant to do so. Likewise defendant's claim that plaintiff's evidence did not show a magistrate was available is without merit because a reasonable view of the evidence is that Max had arranged for a magistrate who would come to the court house to take bail. It is true that Judge Preiss was not anxious to do so at that hour but a reasonable view of the evidence is that he was willing to do so. These facts are completely different from those in the cases cited: Harbison v. Chicago, R. I. & P. Ry. Co., 327 Mo. 440, 37 S.W.2d 609, 79 A.L.R. 1; Teel v. May Department Stores Co., 348 Mo. 696, 155 S.W.2d 74, 79 A.L.R. 1; Mullins v. Sanders, 189 Va. 624, 54 S.E.2d 116; Rounds v. Bucher and Commercial Insurance Company, 137 Mont. 39, 349 P.2d 1026, 98 A.L.R.2d 962. Criminal Rule 21.11 requires persons arrested to be brought before a judge or magistrate as soon as practicable. "The circumstances determine what is a reasonable time. The question of unreasonable delay is generally for the jury, at least if the facts are disputed." 5 Am.Jur.2d 763, Arrest, Sec. 77; see also 35 C.J.S. False Imprisonment § 33, p. 680; A.L.I. Restatement of Torts 2d, Sec. 136, comment e. We hold plaintiff made a case for the jury.

Plaintiff's motion for new trial was sustained on three grounds concerning Instruction No. 7: (1) that it was wholly incompatible with and contrary to defendant's theory of defense stated in defendant's answer, namely: "[I]t was standard procedure to do so (present a prisoner before one authorized to grant bail) without regard to the hour of the day or night where, as in the instant case, a sheriff is not authorized by law to pass on the acceptability of a proffered bail bond;" (2) that it unduly commented on the evidence and was argumentative; (3) that it submitted exactly the contrary hypothesis to defendant's testimony "that he had prepared for just such a contingency by having sufficient deputies to give persons arrested opportunities to make bail bond at any hour, day or night" and submitting "that it was not practicable to give plaintiff the opportunity when he sought it, despite the fact that the pleading upon which he defended this case claimed he was in a position always to give such an opportunity day or night, and his deputies were ordered and directed to do so."

Instruction No. 7 was as follows: "The Court instructs the jury that if you find and believe from the evidence that after plaintiff came into the custody of defendant, Orion J. Litzinger, at or about 11:10 P.M. on September 9, 1957, and plaintiff requested to be taken before a judge or magistrate for an opportunity to be admitted to bail, if you so find, and if you further find and believe from the evidence

that defendant, Orion J. Litzinger, did take plaintiff before a judge or magistrate as soon as was practicable under the circumstances then and there existing, if you so find, then your verdict should be in favor of defendant, Orion J. Litzinger, and against plaintiff.

"In determining whether or not defendant Orion J. Litzinger as requested by plaintiff took plaintiff before a judge or magistrate for the opportunity to be admitted to bail, as soon as practicable, under the circumstances then and there existing, you may consider the hour of night or day and the proximity and/or the availability of a judge or a magistrate."

■ Our view is that the order of the court granting a new trial must be sustained on the first and third grounds because the second paragraph of Instruction No. 7 submitted an issue that was taken out of the case by defendant's answer and testimony that the hour of night or day did not prevent production of plaintiff before a magistrate. Not only was it defendant's pleading and testimony that he was prepared to do so but his testimony likewise showed that he received a telephone call from Judge Preiss indicating his availability. In the Montana case cited by defendant, Rounds v. Bucher, 349 P.2d 1. c. 1028, the court said: "It is incumbent upon the plaintiff, in a suit for false imprisonment, to prove an unnecessary delay." The court further said: "We deem it essential that the plaintiff, in order to make a prima facie case for the jury, prove that a magistrate was available on the particular day when the false imprisonment allegedly occurred." It is to be noted that the issue in that case was whether the magistrate was available between 9:00 A.M. and 11:00 A.M. on the date involved and the plaintiff had no proof at all on that issue. In this case, plaintiff's evidence was sufficient to show a magistrate was available and defendant's answer and testimony was that the hour of night was not the reason for failing to take plaintiff before the magistrate.

Since this case may be tried again, we state that what we have said does not mean that we consider plaintiff's Instruction No. 1 sufficient. Defendant's claim was that Judge Preiss refused to act that night, as did the magistrate in the Virginia case cited, 54 S.E.2d 1. c. 120; while plaintiff's claim was that Judge Preiss was ready and willing to act but defendant refused to bring plaintiff before Judge Preiss that night, although defendant stated he had the deputies necessary and it was his policy to do so. The real fact issue for the jury is which claim is true. We also again point out that the meaningless symbol "and/or" should not be used in an instruction; see Russell v. Empire Storage & Ice Co., 332 Mo. 707, 59 S.W.2d 1061, 1069; see also State ex rel. Adler v. Douglas, 339 Mo. 187, 95 S.W.2d 1179, 1180; City of Washington v. Washington Oil Co., 346 Mo. 1183, 145 S.W.2d 366; Longacre v. Knowles, Mo.Sup., 333 S.W.2d 67.

The order granting a new trial is affirmed and the cause remanded.

All concur.