PRESTON DOBBIN, Respondent, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY and FRED SMITH, Appellants.

Kansas City Court of Appeals, June 12, 1911.

1. LIBEL: Privileged and Libellous Complaints to Principal: Injury to Agent's General Business. In an action for libel, by an expert engaged in collecting claims against railroad companies for overcharges, the libellous letter on its face purported to be in answer to a letter received by defendant railway company from a grain company (which was one of plaintiff's patrons) about the adjustment of a claim then pend-

Dobbin v. Railroad.

ing. As a whole, however, it denounced plaintiff as a danger-
ous man in his calling and was intended to, and did injure
plaintiff in his general business of traffic agent. *Held*, that such
a letter was beyond the privileges of legitimate business cor-
respondence between principals as to the conduct of their agents
(where any objections and complaints· must be restricted to
the subject of the negotiation and be within the bounds of
property) and hence constituted a libel of plaintiff's general
business.

2. ———: **Words and Phrases.** Libel is a tort, and an injurious
wrong perpetrated against the personal or property rights of
the person against whom it is published, which is composed
of three acts, viz, the composing, the writing and the pub-
lishing, but a comprehensive definition of which would seem
to be impossible. To constitute a libel of a man in his busi-
ness or calling, however, it is not essential that he be charged
with the commission of any offense against the law, or of any
moral or even ethical wrong. If the thing said of him is false,
and injures him in his business or calling, the publication
will be held actionable.

3. **LIBEL PER SE: Pleading.** Any publication which imputes
to a merchant or other business man conduct which is injurious
to his character and standing as a merchant or business man is
a libel *per se*, and hence it is not necessary that the petition
plead extrinsic matter, such as setting forth proper allega-
tions by way of inducement, colloquium, and innuendo.

4. ———: **Publication: Pleading and Proof.** Where the petition
alleged that defendants caused said libel to be directed and
mailed to a certain company which was one of plaintiff's patrons,
and which letter was received and read by said company, there
is a sufficient pleading of a publication, if the sufficiency of the
petition was not challenged by demurrer or motion and defend-
ants answered to the merits. Accurately speaking, a corpor-
ation, being a fictional entity, can not read a letter, but where
the proof shows that the letter was opened and read by the
bookkeeper, who had authority to do so, there was a sufficient
publication.

5. **LIBEL: Definite Instructions.** The giving of an instruction
which attempts to give a definition of libel, but which omits
from its hypothesis the finding that the accusations of the letter
were false, is error for which the cause must be reversed and
remanded. The latest decision of the Supreme Court adds
the falsity of the publication as an element in the legal defini-
tion of a libel, and hence necessarily requires that definitive
instructions of the plaintiff should include that element in their
hypothesis.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

REVERSED AND REMANDED.

*M. A. Low* and *Sebree, Conrad & Wendorff* for appellant.

(1) The letter complained of is not libelous *per. se.* Kenworthy v. Journal Co., 117 Mo. App. 327; Legg v. Dunleavy, 80 Mo. 558, 562; Julian v. K. C. Star, 209 Mo. 35, 71; 25 Cyc. L. and P. 243; 2 Bouvier's L. Dict. 207. (2) The petition does not state a cause of action. McManus v. Jackson, 28 Mo. 56; Christal v. Craig, 80 Mo. 367; Legg v. Dunleavy, 80 Mo. 558; Wood v. Hilbish, 23 Mo. App. 389. (3) The petition does not allege a publication of the letter complained of. Julian v. Kansas City Star, 209 Mo. 35, 72; Odgers on Libel and Slander (4 Ed.), 150-1; 25 Cy. L. and P. 365. Newell on Slander and Libel (2 Ed.), 237. (4) The evidence does not show a publication of the letter complained of.

*U. F. Zumbrunn* for respondent.

(1) The letter is libelous *per se.* R. S. 1909, sec. 4818; Mitchell v. Bradstreet, 116 Mo. 226; Townsend on Libel and Slander, 68; Farley v. Publishing Co., 113 Mo. App. 216; McClosky v. Publishing Co., 152 Mo. 339; Legg v. Dunleavy, 80 Mo. 558; Minter et al. v. Bradstreet, 174 Mo. 444; 18 Am. and Eng. Ency. of Law (2 Ed.), p. 967. (2) The letter being libelous *per se* and having a tendency to provoke plaintiff to wrath and tending to injure his business, then plaintiff's petition states a cause of action and we refer to the citations under point 1. (3) The petition alleges a publication and the letter being libelous *per se* states a good cause of action. (4) The writing and sending a libelous letter through the mails and the

Dobbin v. Railroad.

letter read by third parties is a publication. Cyc. 25-367-2. Corporations may publish a libel and can be held liable therefor. 18 Am. and Eng. p. 1058. There is a joint liabaility against every one taking part in the publication of a libel; applying alike to principal and agent. 18 Am. and Eng. (2 Ed.), 1057-1061; Pollasky v. Minchener, 81 Mich. 280; Union Ass'n Press v. Heath, 49 N. Y. App. Div. 247; Hunter v. Wakefield, 97 Ga. 543; Com. v. Murphy, 8 Pa. Co., Ct. 399.

JOHNSON, J.—Action for libel. The petition alleges that plaintiff is an expert in matters pertaining to railroad traffic such as freight rates and charges and was engaged in the business of collecting claims against railroad companies for overcharges, losses of freight, etc.; that his principal patrons were various members of the Kansas City Board of Trade, a large and influential commercial organization, and that the business of adjusting such claims in Kansas City was conducted by defendant Railway Company through its co-defendant, Fred Smith, who was its commercial agent. The petition then alleges: "That on and prior to July 31, 1906, defendants for no cause whatsoever, had conceived a bitter ill will and dislike toward plaintiff, and intending to injure him in his good name and business and occupation as aforesaid, composed and caused to be published of and concerning plaintiff and sent the same to the Grant W. Kenny Grain Company, Kansas City, Missouri, said company being at the time a customer of plaintiff, the following false, willful, wrongful and malicious libel executed by the defendants, The Chicago Rock Island and Pacific Railway Co,. and signed by Fred Smith as its commercial agent,. and caused said libel to be directed and mailed and sent through the United States mail to said Grant W. Kenny Grain Company, which letter was received by said grain company and was read by said Grant W. Kenny Grain Co., and its contents made known to The

Kemper Grain Co., the Geo. A. Adams Grain Co., and the Beall Grain Co., customers and patrons of plaintiff, which said libel was in words and figures as folfows, to-wit:

21903                              July 31, 1906.

The Chicago, Rock Island and Pacific Railway,

Fred Smith, Commercial Agent.

Messrs. Grant W. Kenny Grain Co., City.

Gentlemen: .Your letter of the 25th inst. while your name is signed to this letter, it sounds very much like Mr. Dobbin's writing. If you have any loss on these shipments, put it in the regular way, and it will be investigated, but do not put in one claim as an off-set against another. You can insist upon the payment of the entire loss in another way if you feel like it, but this is in line with Mr. Dobbin's hold-up policy for the last year. I presume the other way is by suit. We can stand this as long as you can, possibly longer. We don't want any of this way of handling claims, and believe it is not necessary. This man has a cracked idea that when he puts in a claim that it must be paid or sue and the sooner the board of trade firms get onto his tactics and know what a dangerous man he is to their interests, the sooner they will cut him out.                   Very truly,

FRED SMITH,

Commercial Agent.

Plaintiff further avers that the writer of said letter, the said Fred Smith, was at the time acting for and in the name of the defendant, The Chicago, Rock Island and Pacific Railway Co., as its commercial agent and in writing said letter was acting for and in behalf of the defendant Railway Company; that the publication of said letter and its contents and the knowledge thereof, and of the attitude (to) the hostility of defendants towards plaintiff, was also brought to the attention and knowledge of said Kemper Adams and Beall Grain Companies, and so influenced and

prejudiced them against plaintiff that they also withdrew and withheld their business from plaintiff, to his great loss and damage.

That defendants maliciously and wrongfully intended to and did prejudice all said grain companies against plaintiff and did influence and cause said Kenney Grain Co., and said Kemper, Adams and Beall Grain Companies, members of said board of trade, to withdraw and withhold their business from plaintiff, and did thereby deprive plaintiff of great gains and profits, to his loss and damage; and that defendants in pursuance of said malicious and unlawful purpose to injure plaintiff and subject him to the suspicion and distrust of said several grain companies, and the public generally, as a person inimical to their interests, and to place plaintiff in bad repute with all said grain companies and the public and any members of said board of trade who might learn of the contents of said libel, and that defendants did thereby influence, induce and cause said Kenney, Kemper, Adams and Beall Grain Companies to withdraw and withhold their adjustments, collections, and other business from plaintiff, all to his great loss and damage," etc.

The defendants filed separate answers each in the nature of a general denial. The trial resulted in a verdict and judgment for plaintiff for $500 actual and $1000 punitive damages. Defendants appealed.

The evidence of plaintiff tends to show that he was "a traffic agent" whose chief business as such was to adjust and collect freight claims for grain dealers who were members of the Kansas City Board of Trade; that the Grant W. Kenny Grain Company, one of such members, gave him all of its freight claims for adjustment and collection and that his business of adjusting such claims against the defendant Railway Company was conducted with that company's commercial agent, defendant Smith, who, on a number of occasions, manifested his preference for dealing with the

claimants themselves instead of dealing through an intermediary.

Owing to the loss of the original letter which gave rise to the action, plaintiff encountered some difficulty in proving its publication. He had a copy of the letter which the evidence shows was a true copy and, without going into the details of the evidence, we think it tends to show that defendant Smith wrote the letter and mailed it to the Grant W. Kenney Grain Company; that the letter was delivered at the office of that company and opened by the bookkeeper who had authority to open the mail and that, later, the bookkeeper delivered the letter to plaintiff. Evidently the president of the grain company was not a friendly witness to plaintiff. He denies that he saw the letter, but we think the inference is very strong that if he did not read it, he received knowledge of its contents from the bookkeeper.

Plaintiff states that after this episode he received no new business from the Grant W. Kenney Grain Company. From his testimony it appears that the contents of the letter were made known to other members of the board of trade but since the circuit court struck out this evidence, we shall leave it out of consideration.

The first subject to engage our attention is the question of whether or not the letter fairly may be considered as libelous. Libel is a tort, an injurious wrong perpetrated against the personal or property rights of the person of whom it is published. It is composed of three acts, viz., the composing, the writing and the publishing. A comprehensive definition of the term is not to be found in the books and would seem to be impossible. "As a libel comprehends a complex aggregate of particulars, either not all known or not all agreed upon, it may be impossible to circumscribe them by a correct and compact general description." [Townsend on Slander (4 Ed.), p. 16.] A

common definition recognized and applied by the courts of this state is that libel is "a malicious publication expressed either in printing or writing, or by signs or pictures, tending to either blacken the memory of the dead or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule." [Kenworthy v. The Journal Company, 117 Mo. App. 327; Legg v. Dunleavy, 80 Mo. 558; Julian v. K. C. Star, 209 Mo. 35; sec. 4818, Revised Statutes 1909. But words written of one's trade or business may be libelous when they might not be so if spoken of the individual simply. [Minter v. Bradstreet Co., 174 Mo. l. c. 486.] Townsend says (p. 58):

"No one shall, without legal excuse, publish language concerning another or his affairs which shall occasion him damage. In other words every publication of language concerning a man or his affairs which, as a necessary or natural and proximate consequence occasions pecuniary loss to him is prima facie a slander or a libel."

And in Locke v. Bradstreet Co., 22 Fed. Rep. 771, it is said:

"Every willful and unauthorized publication, written or printed, which imputes to a merchant or other business man conduct which is injurious to his character and standing as a merchant or business man is a libel and implies malice."

To constitute a libel of a man in his business or calling it is not essential that he be charged with the commission of any offense against the laws or of any moral or even ethical wrong. If the thing said of him is false and injures him in his business or calling the publication will be held actionable. As, for example, the fact that a merchant is insolvent implies no moral turpitude or violation of business ethics, yet, because a false accusation of insolvency will injure the credit and even ruin the business of a solvent merchant it is held to be libelous. [Hermann v. Brad-

street Co., 19 Mo. App. 227; Minter v. Bradstreet, supra.]

Before applying these rules to the letter in hand we shall speak of the occasion which prompted its author to write and mail it. On its face it purports to be in answer to a letter received by defendant Railway Company from the Kenney Grain Company about the adjustment of a claim then pending. To some extent the correspondence betwen two business men relative to business they are endeavoring to transact or settle should be accorded some privileges. Quite often business men object to the interposition of agents in their business affairs and refuse to deal with any other person than a principal. And it is a common occurrence for one party to a negotiation to complain to the other party of the method or attitude of the agent of such other party in the particular transaction. As long as such objections and complaints are restricted to the subject of the negotiation and are in the bounds of propriety, we perceive no reason for regarding them as actionable, even if they may injure the agent in his business. Thus, a person may refuse to deal with an agent in the purchase of real estate for the reason that he does not wish to deal with an agent, or that he does not approve of the business methods of the particular agent. Certainly that would be his privilege and he could give expression to it without incurring liability for libel though the effect of his position might be to deprive the agent of employment in that matter. But if he went further and based his refusal on the false ground that the agent was dishonest, incapable or a provoker of strife and discord, such charge would be actionable, since its consequences would extend beyond the reasonable bounds of the negotiation in hand and would injure the agent not only in that matter but in his business as an agent.

The letter in question shows that the writer was deeply incensed over what he claimed was the policy

of plaintiff to bring suits on claims without giving reasonable time and opportunity for investigation and adjustment. The feeling of the author is disclosed in his characterization of the policy as a "hold-up policy," as a "cracked idea," and of plaintiff as a "dangerous man" to the interests of Board of Trade firms and one whom such firms would cease to employ as soon as they realized his dangerous character. The letter must be read as a whole and while it is true, as argued by defendants, that the vituperative adjectives and phrases should be given the meaning the context clearly shows was intended to be expressed by the author (Trible v. Foster, 87 Mo. 49; Hall v. Adkins, 59 Mo. 144; Bridgman v. Armour, 57 Mo. App. 528), still we think the whole letter denounced plaintiff as a dangerous man in his calling and was intended to and did injure him in his general business of "traffic agent." This was beyond the scope of the privileges of legitimate business correspondence and constituted a libel of plaintiff's business.

Counsel for defendants argue: "We are not contending here that such a statement, with proper allegations by way of inducement, colloquium and innuendo, and proof thereof might not be libelous, but all we are contending for here is that the statement, 'but this is in line with Dobbin's hold-up policy,' is not libelous *per se*,'" and contend that the action must fail since the petition contains no innuendo or prefatory averments but pleads a libel *per se*.

In Mitchell v. Bradstreet Co., 116 Mo. 226, the Supreme Court, after reviewing the authorities, held that any publication which imputes to a merchant or other business man conduct which is injurious to his character and standing as a merchant or business man is a libel *per se*. This ruling is supported by all the authorities we have consulted and its application to the present case demonstrates the unsoundness of the contention that the petition should have pleaded extrinsic

matter. Defendants argue further that a publication of the letter is neither pleaded nor proved. Of course it is the publication of the libel that gives the right of action. [Julian v. Kansas City Star, supra.] And the publication must be pleaded and proved. The allegation that defendants "caused said libel to be directed and mailed and sent through the United States mail to said Grant W. Kenney Grain Company, which letter was received by said grain company and was read by said Grant W. Kenney Grain Company" is a sufficient pleading of a publication, where, as here, the sufficiency of the petition was not challenged by demurrer or motion and defendants answered to the merits. Accurately speaking, a corporation, being but a fictional entity, cannot read a letter but the meaning of the allegation is clear and unambiguous that the pleader intended to charge that the letter was received and read by the person or persons whose business it was to open and read such letter. The proof shows that the letter was opened and read by the book-keeper who had authority from the corporation to open and read its mail. "Sending a letter to one whose clerk is in the known habit of opening his letters and who actually reads the letter in question has been held to constitute a publication within the rule." [25 Cyc. 368, and cases cited.]

These points also must be ruled against the contention of defendants.

But we find the cause must be remanded for a new trial on account of error in the following instruction given at the request of plaintiff:

"The jury are further instructed that if you find from the evidence that the letter complained of, has a tendency to provoke plaintiff to wrath or to expose him to public hatred, contempt or ridicule, or to deprive plaintiff of the benefits of public confidence and social intercourse, or has a tendency to diminish plaintiff's reputation, impair his credit, or injure his busi-

ness, then, for your guidance, the court informs the jury that the letter in question is libelous.''

The instruction which, it will be observed, attempted to give a definition of libel omitted from its hypothesis the finding that the accusations of the letter were false. In McCloskey v. Pulitzer Pub. Co., 152 Mo. l. c. 349, the Supreme Court held, ''The fact that the truth of the publication was a defense, was no part of the definition of libel and the instruction was not faulty because it failed to state that it was.'' But in the recent case of Julian v. Kansas City Star, 209 Mo. l. c. 71, the court say:

''What is libel? In Words and Phrases, vol. 5, p. 4116, it is defined thus: 'In its most general and comprehensive sense any publication injurious to the reputation of another is a libel.' In 2 Bouvier's L. D., p. 207, it is: 'Everything, written or printed, which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been.'

''Since under our law the truth of the article published may be shown in justification, to the above definition the word 'false' in reference to the article should be added.''

The Supreme Court does not overrule the McClosky case in terms, but in effect, and we must follow the rule of the latest decision of that court which, in adding the falsity of the publication as an element in the legal definition of libel, necessarily requires that definitive instructions of the plaintiff should include that element in their hypothesis.

The judgment is reversed and the cause remanded. All concur.