Camillus MUSSELMAN,
Plaintiff-Respondent,

v.

ANHEUSER–BUSCH, INC.,
Defendant-Appellant.

No. 45238.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 12, 1983.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
Aug. 29, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Bryan, Cave, McPheeters & McRoberts, Dennis C. Donnelly, St. Louis, for defendant-appellant.

John H. Marshall, Burns, Marshall & Burns, St. Louis, Devereaux, Stokes & Luehrman, St. Louis, Frances M. Luehrman, Clayton, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Camillus Musselman (respondent) brought this action against Anheuser-Busch, Inc. (appellant) under § 290.140, RSMo 1969, alleging that the service letter furnished him did not state the true cause for his discharge. A jury awarded respondent $1.00 in nominal damages and $250,000 in punitive damages. Appellant maintains that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. Appellant maintains (1) that there was no substantial evidence that the service letter falsely stated the reason for discharge, and (2) that there was no substantial evidence of actual malice on which an award of punitive damages could be based. We affirm the award of nominal damages and reverse and vacate the order awarding punitive damages.

The facts are as follows:

Respondent began his employment at Anheuser-Busch on May 1, 1968, as a Technical Sales Service Representative in the Industrial Products Division of the Company. In this capacity, he travelled throughout the United States demonstrating respondent's products and offering in-plant technical assistance to customers.

Respondent's immediate supervisor was Larry Liebman, who, in turn, reported to Herman Saussele, manager of the technical service group. It was Liebman's responsibility to arrange respondent's schedule of customer calls. Liebman testified at trial that during 1974, problems developed because respondent sometimes failed to follow directions, failed to maintain a known schedule, failed to submit timely routine call reports concerning his activities and often interjected himself into sales activities. When there was no change in respondent's conduct, his immediate supervision was placed under Saussele's direct control.

Respondent acknowledged his disagreements with Liebman concerning sales activities, but considered the matter resolved. Furthermore, respondent claimed that neither Saussele nor Liebman ever informed him of any need for improvement. At trial, respondent introduced written evaluations which were instituted by the company. In the June, 1974, review, plaintiff received a "good" or "satisfactory" rating in eight of the twelve categories. In the other four, cooperation and relationship were listed as "needs improvement," attitude and flexibility were listed as "needs improvement," communication was also listed as "needs improvement," and personality was marked "excellent." The comments on the form reflected that respondent "at times does not communicate well, does not follow di-

rections at all times [and that he] has to learn to take directions better."

In the 1975 report, respondent received "good" or "satisfactory" in all areas except communication and personality. The former was still marked "unsatisfactory" and the latter was still "excellent."

The incident which precipitated respondent's discharge occurred at a national convention for Anheuser-Busch employees, held in Clearwater, Florida, on February 9–12, 1975. Persons attending the convention included respondent, Liebman, Saussele, William Harrington, then vice president of the Industrial Products Division, Dana Downing, manager of the development group in the division, and August Busch III, President of Anheuser-Busch.

As part of the convention, a dinner party was hosted by Mr. Busch. Respondent, when introduced to Mr. Busch and his fiancée addressed Mr. Busch as "buddy" and called Busch's financée by her first name. Later that evening, respondent dropped two beer glasses in front of Mr. Busch and other company personnel.

The following day, respondent was requested to give a presentation concerning work he had been performing. August Busch III was in attendance. While fielding inquiries from the audience, respondent asked Busch a question. Busch did not respond.

Upon returning to St. Louis, Harrington directed Downing to inquire into respondent's employment history. Downing went to Saussele who reported respondent's failure to follow directions. Downing reported back to Harrington who gave the decision to terminate respondent.

Respondent was informed of his discharge by Saussele and Downing. Before leaving, respondent orally requested a letter "to use to find another job." Respondent followed up this request by sending a written request for a service letter detailing dates of employment and the cause of discharge. Saussele testified that he never received respondent's letter, and was un-

aware that a service letter statute existed. He nevertheless mailed respondent a letter three weeks after his discharge. It stated as follows:

"TO WHOM IT MAY CONCERN:

"C.B. Musselman's performance of his job assignments in the Industrial Products Division of Anheuser-Busch was done in excellent fashion.

"Without question, his abilities to perform in a technical capacity in a corrugating plant are outstanding. He is able to quickly recognize problems and deficiencies and, consequently, correct them.

"The reason Mr. Musselman is no longer employed at Anheuser-Busch is because of an unusual personality conflict which is in no way a reflection on his job performance.

"Herman Saussele, Jr."

On July 20, 1976, respondent sent another letter to Saussele requesting a letter stating the nature of his employment and the reason for his discharge. On August 12, 1976, he received another letter from Saussele identical to the first letter.

### NOMINAL DAMAGES [1]

■ Appellant alleges that respondent failed to produce any evidence that the reason stated in the service letter was not the true reason his employment was terminated. The recent decision of our Supreme Court in *Stark v. American Bakeries Company,* 647 S.W.2d 119 (Mo.1983), is dispositive of this point. In that case, the court considered a service letter which described the reason for discharge as "unsatisfactory work." The court found that this statement, because of its vagueness, was not in compliance with § 290.140 RSMo 1969. In explaining its decision, the court reasoned,

[t]he purpose of § 290.140, RSMo 1969, is to deter corporate employers from destroying or severely impairing the employability of former employees by furnishing false or misleading information as to their service or false reasons for their discharge. * * * The target of the stat-

---

1. Respondent has been employed since his dis- charge and makes no claim for actual damages.

ute is corporate blacklisting, i.e. severe and unjustified career damage by former corporate employers. Armed with accurate information about their service and the true reasons for discharge, it is hoped that employees can counter false information disseminated by former corporate employers or use truly stated reasons to sue for wrongful discharge in appropriate cases.

*Stark v. American Bakeries Company.*

Applying this rationale to our case, appellant's statement, "[t]he reason Mr. Musselman is no longer employed at Anheuser-Busch is because of an unusual personality conflict which is no way a reflection of his job performance," would not enable respondent to counter false or misleading statements concerning his performance or the circumstances of his discharge. The letter fails to state the specific "cause" for discharge as required by § 290.140, RSMo 1969. Appellant is liable for $1.00 nominal damages.

## PUNITIVE DAMAGES

Appellant contends that the recent amendment of § 290.140 RSMo 1982, precluding punitive damages in those cases when the employer has furnished the employee a service letter pursuant to the statute, must be applied retroactively. Appellant argues that punitive damages are penal in nature and § 290.140, as repealed and re-enacted, must be given retroactive effect. We disagree.

This court recently decided this issue in *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983). We held that in a civil case, when a judgment awarding punitive damages is entered, a vested interest in said award is acquired and can not be divested by the repeal and reenactment of § 290.140 which did not take effect until August 13, 1982. *Id.,* §§ 1.170 and 1.180 RSMo 1978.

Appellant further argues that there was insufficient evidence that the service letter was written with malice. The test to be applied in determining if malice existed as a basis for an award of punitive damages is whether the defendant did a wrongful act intentionally without just cause or excuse. *Stark v. American Bakeries Company; Pollock v. Brown,* 569 S.W.2d 724 (Mo. banc 1978). To be assessed punitive damages, defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it. *Stark v. American Bakeries Company; Pollock v. Brown.* In light of these rules there was insufficient evidence of malice.

The respondent claims there was sufficient evidence to sustain punitive damages. To support a finding essential to recovery by circumstantial evidence, the shown circumstances must be such that 1) the facts necessary to support the finding may be inferred and reasonably must follow; 2) that the existence of such facts may not depend upon guesswork, conjecture or speculation and 3) that the evidence should have the tendency to exclude every reasonable conclusion other than the one desired. *Stark v. American Bakeries Company; Herberholt v. DePaul Community Health Center,* 625 S.W.2d 617 (Mo. banc 1981). Although an inference need not be justified beyond all doubt, where the evidence affords no more than equal support for either of two inconsistent and contradictory inferences as to the ultimate and determinative fact, liability is left in the field of conjecture, and there is failure of proof. *Herberholt, supra.*

In its service letter to respondent, appellant stated "[t]he reason Mr. Musselman is no longer employed at Anheuser-Busch is because of an unusual personality conflict . . . ." Therefore, to establish that appellant's service letter did not truly state the reason for his discharge, respondent must cite substantial evidence that he was not discharged because of an unusual personality conflict. *Stark v. American Bakeries Company.* We fail to find substantial

evidence of circumstances indicating he was not discharged because of his personality.

Saussele testified he had no knowledge of the service letter statute when he wrote respondent's letter. Furthermore, it was his belief that the reason stated in the "letter" was the true reason for respondent's discharge. Although we have determined the reason for discharge stated in respondent's service letter was too vague to satisfy the requirements of § 290.140, RSMo 1969, there is no evidence that Saussele knew it was wrong to state an overly general reason for discharge. *See Stark v. American Bakeries Company.*

The record is filled with testimony that respondent had difficulties relating to his superiors. Further evidence was adduced that respondent's fellow employees were upset with his unsolicited participation in their sales areas. In addition, respondent's 1974 review reported that "at times he does not communicate well." Finally, respondent's behavior at the Florida convention was seen as another example of his "unusual personality conflict."

Saussele drafted his letter based on respondent's employment record. Nothing in the record suggests that Saussele intentionally stated a false reason for respondent's discharge. Accordingly, we affirm the trial court's judgment awarding $1.00 nominal damages but reverse and vacate the awarding of punitive damages.

Affirmed in part, reversed in part.

SMITH and KELLY, JJ., concur.